IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEBBIE LLANES AND RICHARD      §
LLANES,                        §
                               §
          Plaintiffs,          §
                               §
V.                             §        No. 3:13-cv-2243-M-BN
                               §
U. S. BANK, NATIONAL           §
ASSOCIATION, TRUSTEE,          §
                               §
          Defendant.           §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management, including a recommendation on Defendant U.S. Bank, National Association, Trustee's motion for summary judgment, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation that Defendant's Motion for Final Summary Judgment [Dkt. No. 20] should be granted in part and denied in part.

**Procedural Background**

Plaintiffs Debbie and Richard Llanes filed this lawsuit in Texas state court, alleging several causes of action. *See* Dkt. No. 1-3 at 2-10. Defendant removed the case to this Court and filed a motion to dismiss. *See* Dkt. Nos. 1 & 5. District Judge Barbara M. G. Lynn accepted the undersigned's recommendation and granted the motion to

dismiss, ordering that Plaintiffs' claims to quiet title and for trespass to title were dismissed, Plaintiffs' Texas Deceptive Trade Practices Act claims were dismissed with prejudice, and Plaintiffs' claims for breach of contract and violations of the Texas Debt Collection Practices Act ("TDCA") and request for declaratory relief were dismissed without prejudice and giving Plaintiffs an opportunity to file an amended complaint. *See* Dkt. Nos. 15 & 16.

Plaintiffs filed an amended complaint asserting claims for breach of contract, to quiet title, and for violations of the TDCA. *See* Dkt. No. 18. Defendant then moved for summary judgment on all of Plaintiffs' claims. *See* Dkt. No. 20. Plaintiffs filed their Response to Defendant's Motion for Summary Judgment, *see* Dkt. No. 23, and Defendant filed its Reply Brief in Support of Motion for Summary Judgment, *see* Dkt. No. 24.

## Objection to Summary Judgment Evidence

Defendant objects to the Declaration of Janelle Edwards [Dkt. No. 23-2] filed in support of Plaintiffs' Response to Defendant's Motion for Summary Judgment because it was not attested to under penalty of perjury as required by 28 U.S.C. § 1746. *See* Dkt. No. 24 at 1-2. Section 1746 provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making same, [ ] such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]

28 U.S.C. § 1746.

Janelle Evans declares that "[a]ll facts stated in this declaration are within my personal knowledge and are true and correct." Dkt. No. 23-2 at 1. But she does not make the declaration under penalty of perjury, the declaration is not dated, and the declaration was not sworn to and signed by an authority such as a notary public or other official. *See id.* at 1-2. Because the Declaration of Janelle Evans does not comply with 28 U.S.C. § 1746's requirements for an unsworn declaration, it is not competent summary judgment evidence, and the undersigned will not consider it. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

## Factual Background and Allegations

The summary judgment evidence – when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiffs and when all disputed factual controversies are resolved in Plaintiffs' favor as the nonmoving parties – shows the following for purposes of resolving Defendant's Motion for Final Summary Judgment [Dkt. No. 20].

Plaintiffs Debbie and Richard Llanes purchased a house in Fate, Rockwall County, Texas, on August 24, 2006. *See* Dkt. No. 18. To finance the purchase, Plaintiff Richard Llanes executed an adjustable rate note, and both Plaintiffs executed a deed of trust. *See* Dkt. No. 21-1 at 2; Dkt. No. 21-2; Dkt. No. 21-3. The deed of trust was assigned to Defendant U.S. Bank, N.A. on August 12, 2009. *See* Dkt. No. 21-1 at 2; Dkt. No. 21-4.

Plaintiffs experienced financial difficulties in 2009 and applied for a loan modification with the mortgage servicer, Wilshire Credit Corporation, on or about May 31, 2009. *See* Dkt. No. 23-1 at 1-2, 9. Plaintiffs completed the trial payments, and their application was approved. Under the terms of the modification agreement, Wilshire zeroed out the arrearage, and Plaintiffs agreed to make monthly payments in the amount of $1,660 for 27 years at a 5.5% interest rate. *See id.* at 2. The amount of the monthly payment included escrow and was subject to change according to the amount of taxes and insurance. *Id.*

In January of 2010, Wilshire sent a written loan modification agreement to Plaintiffs for their approval. *See id.* at 2. Plaintiffs signed, notarized, and returned both copies of the loan modification agreement to Wilshire. *See id.* Plaintiffs did not keep a copy, and Wilshire did not send Plaintiffs a copy of the fully executed modification agreement as it had represented that it would do. *See id.* Neither Plaintiffs nor their attorney have been able to obtain a copy of the written modification agreement from Wilshire, which apparently is no longer in business. *See* Dkt. No. 23-3.

The servicing rights for the note were assigned from Wilshire to BAC Home Loans Servicing, LP, a subsidiary of Defendant, effective March 1, 2010. *See* Dkt. No. 23-1 at 13, 15, 21. On March 8, 2010, the new loan servicer informed Plaintiffs that they were in default even though Plaintiffs were current in their payments under the modification agreement. *See id.* at 2-3, 23. The new loan servicer sent a payment coupon book requiring payments in the original loan amount of $1,918.05 per month, which were increased to $2,414.31 at 7% interest on June 1, 2010. *See id.* at 2, 26-27.

Plaintiffs continued to make their monthly payments under the terms of the modification agreement, but Plaintiffs could not make the higher payments under the original note. *See id.* at Dkt. No. 23-1 at 2, 5.

The new loan servicer denied knowledge of and refused to honor the terms of the modification agreement because it had no proof of approval from Wilshire, and the new loan servicer insisted that mortgage payments be made pursuant to the original note. *See id.* at 2-3, 23, 26, 28, 31. Plaintiffs also were informed that they would be required to submit a new loan modification application through the new loan servicer, and they did so several times over a three-year period. *See id.* at 3. Each time that Plaintiffs submitted a new loan modification application, the application was denied on the basis that paperwork was missing even though Plaintiffs sent all requested documentation. *See id.* at 3-4.

On one occasion, a representative of the new loan servicer told Debbie Llanes that the servicer had all the information from when Plaintiffs first applied for the loan modification and were approved by Wilshire, and she agreed to send Plaintiffs a copy after she got permission from management. *See id.* at 4. When the promised documents were not received, Debbie Llanes called back and was routed to a different representative who reported that there was nothing from Wilshire, which, the representative said, was strange because the loan servicer usually has some type of documentation when a loan is bought. *See id.* at 4. But the representative said that, in this case, it was as if everything had been erased. *See id.*

Plaintiffs also attempted a short sale of the house and received an offer. *See id.*

But the new loan servicer advised Plaintiffs not to sell because the loan modification would be approved – but it was subsequently denied. *See id.*

Defendant declared the note to be in default, *see* Dkt. No. 21-1 at 2; Dkt. No. 23-1 at 23-24, and foreclosed on the property on December 4, 2012, *see* Dkt. No. 21-1.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the

light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential

element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

While the Local Rules in this district do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 204-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

## Analysis

All of Plaintiffs' claims hinge on the existence of and compliance with a modification agreement. Plaintiffs allege that Defendant's predecessor agreed to modify the original mortgage loan agreement but that Defendant refused to recognize or honor the modification agreement and unilaterally rescinded the modification agreement. *See* Dkt. No. 18. Plaintiffs assert that, as a result, (1) Defendant breached the modification agreement; (2) there is a cloud on their title because the trustee's deed is void and did not transfer title after the foreclosure because there was no breach of the deed of trust, as modified by the modification agreement; and (3) Defendant violated the TDCA because it attempted to collect a debt not justly due and owing because it insisted on payment under the original note instead of the modification agreement. *See id.*

I.   Summary judgment should be denied on Plaintiffs' breach of contract claim.

The elements of a breach of contract claim under Texas law are: "(1) the

existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Defendant argues that Plaintiffs can offer no summary judgment evidence showing they were excused from performing under the original note and that Defendant's summary judgment evidence does not support Plaintiffs' loan modification allegations. *See* Dkt. No. 20 at 5-7. In their summary judgment response, Plaintiffs focus on establishing the existence of a modification agreement and argue that they are excused from compliance with the original note because it was superceded by the modification agreement, as to which Plaintiffs were in compliance, and that Defendant breached the modification agreement by insisting on payment under the original agreement and refusing to accept Plaintiffs' tenders of payment under the modification agreement. *See* Dkt. No. 23 at 4-5.

Plaintiffs do not have a written copy of the modification agreement and have been unable to obtain one through the judicial process. *See* Dkt. No. 23-1 at 1-5; Dkt. No. 23-3. Plaintiffs therefore rely on Federal Rule of Evidence 1004 to prove the existence and terms of the modification agreement. Under that rule,

> [a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a)    all the originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b)    an original cannot be obtained by any available judicial process;
>
> (c)    the party against whom the original would be offered had control

of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at trial or hearing; and fails to produce it at the trial or hearing; or

(d)     the writing, recording, or photograph is not closely related to a controlling issue.

FED. R. EVID. 1004; *see also Klein v. Frank*, 534 F.2d 1104, 1107-08 (5th Cir. 1976) ("[T]he generally accepted rule [is that] if the party relying upon the writing can prove that a writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and can present secondary evidence of its contents.").

Plaintiffs submitted the Declaration of Debbie Llanes, which describes the loan modification process and states the terms of the modification agreement. *See* Dkt. No. 23-1 at 1-5. Debbie Llanes also declares that the loan modification was approved by Wilshire and explains that the original written modification agreement has been lost or destroyed and that Plaintiffs had no control over the written modification agreement after they returned it to Wilshire per Wilshire's request and in reliance on Wilshire's representation that it would provide Plaintiffs with a fully executed copy of the modification agreement. Neither Plaintiffs nor their attorney have been able to obtain a copy of the written modification agreement from Wilshire, which is apparently out of business.

The undersigned concludes that Plaintiffs have met their burden to raise a fact issue concerning the existence of the alleged loan modification agreement.

Plaintiffs have also submitted sufficient evidence to raise fact issues concerning whether their nonperformance under the original note was excused by the modification

agreement and whether Defendant breached the deed of trust by unilaterally rescinding the modification agreement and insisting on payments under the original note. "Under Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach." *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 629-30 (N.D. Tex. 2010) (citing *Longview Const. & Dev., Inc. v. Loggins Const. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App. –Tyler 1975, writ dism'd by agr.). The summary judgment evidence, when viewed in the light most favorable to Plaintiffs, shows that Plaintiffs and Wilshire entered into a modification agreement and that Plaintiffs performed under the modification agreement. But, after Defendant's subsidiary began servicing the loan, Defendant interfered with Plaintiffs' performance because it refused to recognize the modification agreement and insisted on payments under the original note. This evidence is sufficient to raise a fact question on Plaintiffs' breach of contract claim.

Defendant's Motion for Final Summary Judgment [Dkt. No. 20] should be denied as to Plaintiffs' breach of contract claim.

II.   <u>Summary judgment should be denied on Plaintiffs' quiet title claim.</u>

Defendant claims that it is entitled to summary judgment on Plaintiffs' suit to quiet title because Plaintiffs have not tendered or offered to tender the full amount owed on the promissory note and because Plaintiffs have not plead that they have superior title to the property. *See* Dkt. No. 20 at 7.

As an initial matter, Plaintiffs abandoned their original quiet title claim in response to Defendant's motion to dismiss, and the Court dismissed it on that basis. *See* Dkt. No. 15 at 2 n.1, 13; Dkt. No. 16. But Plaintiffs' allegations in support of their quiet title claim in their original petition were different than those in their Amended Complaint. *Compare* Dkt. No. 1-3 at 4, 7-8, *with* Dkt. No. 18 at 5. And Plaintiffs were granted leave to file an amended complaint. *See* Dkt. No. 15 at 13; Dkt. No. 16. Under these circumstances, Defendant's request for dismissal because, according to Defendant, Plaintiffs' claim for quiet title was dismissed with prejudice and Plaintiffs' Amended Complaint is very much the same in regards to this claim is not well-taken. *See* Dkt. No. 20 at 4.

In a suit to quiet title, a plaintiff must establish "a right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. – Houston [1st Dist.] 2009, pet. denied). In Texas, the elements of the cause of action to quiet title are: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-cv-3014-D, 2012 WL 2399369, at *7 (N.D. Tex. June 26, 2012). The plaintiff has the burden ultimately of establishing his "superior equity and right to relief," *Hahn*, 321 S.W.3d at 531, and must rely on the strength of his or her own title, not the weaknesses of the defendant's title, *see Singha v. BAC Home Loans Servicing, L.P.*, No. 13-40061, 2014 WL 1492301, at *5 (5th Cir. April 17,

2014) (citing *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christ 2001, no pet.).

Plaintiffs allege that the foreclosure was invalid and the trustee's deed, although valid on its face, was ineffective to convey title because Plaintiffs were not in default and there was no breach of the deed of trust, as modified by the modification agreement. For the same reasons discussed above regarding Plaintiffs' contract claim, Plaintiffs have offered sufficient summary judgment evidence to raise factual issues concerning whether Plaintiffs have superior title because there was no breach of the deed of trust, as modified by the modification agreement, and, as a result, whether the trustee's deed is void and/or voidable and ineffective to transfer title.

Defendant's Motion for Final Summary Judgment [Dkt. No. 20] should be denied as to Plaintiffs' quiet title claim.

III.   <u>Summary judgment should be granted on Plaintiffs' TDCA claims.</u>

Plaintiffs allege Defendant violated Texas Finance Code § 392.301(a)(8) by threatening to foreclose when there was no default or any default had been excused and Texas Finance Code § 392.303 by charging or attempting to charge Plaintiffs unauthorized sums of money. *See* Dkt. No. 18 at 5-6; Dkt. No. 23 at 8-10; TEX. FIN. CODE ANN. §§ 392.301(a)(8), 392.303. Under Section 392.301(a)(8), "a debt collector may not use threats, coercion, or attempts to coerce that ... threaten[ ] to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). And under Section 392.303, "a debt collector may not use unfair or unconscionable means to ... collect[ ] or attempt[ ] to collect interest or a charge, fee, or expense incidental to the obligation unless the

interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303.

Plaintiffs' claims under both of these statutory provisions are based on Plaintiffs' allegations that their relationship with Defendant was governed by the alleged modification agreement instead of the original note. *See* Dkt. No. 18 at 5-6.

As an initial matter, Defendants' request for summary judgment on the TDCA claim because, according to Defendant, it was dismissed with prejudice depends on a mistaken premise. *See* Dkt. No. 20 at 4. This claim – unlike Plaintiffs' Texas Deceptive Trade Practices Act claim – was dismissed without prejudice, and Plaintiffs were granted leave to file an amended complaint. *See* Dkt. No. 15 at 13; Dkt. No. 16.

Defendant claims it is entitled to summary judgment on Plaintiffs' TDCA claims because there was no actionable misrepresentation. *See* Dkt. No. 20 at 7-10. But Plaintiffs do not allege that Defendant made a misrepresentation. *See* Dkt. No. 18 at 5-6; Dkt. No. 23 at 9.

Defendant also seeks summary judgment on Plaintiffs' TDCA claims based on the economic loss doctrine because it claims there is no summary judgment evidence that Plaintiffs suffered an injury independent from the subject matter of the deed of trust. *See* Dkt. No. 20 at 7-10. "In Texas, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec.10, 2012) (quoting *Lamar Homes, Inc. v. Mid–Continent*

*Cas. Co.*, 242 S.W.3d 1, 12 (Tex.2007)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *Id.* (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex.App.-Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 13). "The focus of the rule is on determining whether the injury is to the subject of the contract itself." *Id.* (internal quotation marks omitted). The burden is on the plaintiff to establish evidence of an independent injury. *See id.* (citing *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App. – Dallas 2009, no pet.)).

Although the United States Court of Appeals for the Fifth Circuit has not addressed the application of the economic loss doctrine to TDCA claims in the foreclosure context, district courts within the Fifth Circuit have applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See Hernandez v. U.S. Bank, N.A.*, No. 3:13-cv-2164-O, 2013 WL 6840022, at *10 (N.D. Tex. Dec. 27, 2013) (applying economic loss doctrine to allegations that defendants misrepresented the character and extent of plaintiffs' mortgage loan and sought other unauthorized charges); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K, 2013 WL 705110, at *12 (N.D. Tex. Feb.4, 2013), *rec. adopted*, 2013 WL 705876 (N.D. Tex. Feb.26, 2013) (applying economic loss doctrine to dismiss

claims under Texas Finance Code §§ 392.204(a)(8) & (19)).[1]

Here, too, the Court should apply the economic loss doctrine to Plaintiffs' repleaded TDCA claims. Plaintiffs' TDCA claims are based on allegations that Defendant wrongfully charged them for sums under the original note that were not due under the modification agreement and subsequently foreclosed on their house. *See* Dkt. No. 23 at 9. Plaintiffs attempt to raise "a breach of contract claim cloaked in the lexicon of the TDCA," *see Hicks,* 2010 WL 4274745, at *7, but fail to present summary

---

[1] *See also McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-cv-424, 2010 WL 5834802, at *5 (E.D. Tex. Dec.14, 2010), *rec. adopted*, 2011 WL 675386 (E.D. Tex. Feb.16, 2011) (explaining that the plaintiff's allegations of misrepresentation by attempting to collect a debt in violation of the agreement against CitiFinancial stated a breach of contract but not a TDCA claim); *Hicks v. Chase Home Fin. LLC*, No. 3:09-cv-1652-G, 2010 WL 4274745, at *7 (N.D. Tex. Oct. 21, 2010) (judgment vacated following entry of agreed final judgment) (dismissing on summary judgment the plaintiff's claims against Chase under the TDCA for alleged misrepresentations of the amount of the debt and attempts to collect fees not authorized by the modification agreement because they sounded in contract); *Singh v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3891060 (E.D. Tex. Sep.7, 2012) (holding that because the Deed of Trust governed the conduct the plaintiff alleged violated the TDCA, the plaintiff could not recover under a tort theory); *cf. Enis v. Bank of Am., N.A.*, No. 3:12-cv-295-D, 2013 WL 1721961, at *7 n.13 (N.D. Tex. Apr. 22, 2013) ("Even if an exception to the statute of frauds did apply, it is questionable whether Enis could recover damages under the TDCPA for BOA's denying loan modification and seeking foreclosure. The economic loss rule, also called the independent injury rule, apparently would bar Enis' claim because it is 'premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender.' *See Caldwell v. Flagstar Bank, FSB*, 2013 WL 705110, at *12 (N.D. Tex. Feb. 4, 2013) (Horan, J.), *rec. adopted*, 2013 WL 70586 (N.D. Tex. Feb. 26, 2013) (Kinkeade, J.) (applying economic loss rule to dismiss claims under §§ 392.204(a) (8) & (19)). Enis does not assert that he suffered injury apart from the economic loss of being denied modification and being foreclosed upon. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) ('When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.' (citation omitted)).").

judgment evidence showing that Defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties," *see DeLanney*, 809 S.W.2d at 494, or that they suffered noncontractual injuries.

For all of these reasons, Defendant's Motion for Final Summary Judgment [Dkt. No. 20] should be granted as to Plaintiffs' TDCA claims.

## Recommendation

Defendant's Motion for Final Summary Judgment [Dkt. No. 20] should be granted in part and denied in part. Defendant's Motion for Summary Judgment should be granted as to Plaintiffs' claims under the Texas Debt Collection Act, which should be dismissed with prejudice. Defendant's Motion for Summary Judgment should be denied as to Plaintiffs' breach of contract and quiet title claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

-17-

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: May 30, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE